UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 21-cr-10104-PBS |
| VLADISLAV KLYUSHIN<br>Defendant | ) ) ) ) | |

**SUPPLEMENTAL SUBMISSION IN OPPOSITION TO MEMORANDUM OF THE UNITED STATES IN SUPPORT OF DETENTION**

Now comes the defendant Vladislav Klyushin, by and through undersigned counsel, and hereby respectfully submits the following supplement addressing issues that were raised during the December 22, 2021 detention hearing.

**I.    London, U.K. Apartment.**

The London, United Kingdom apartment that Mr. Klyushin proposes to post in order to secure the $1.5 million portion of his bond was purchased by Mr. Klyushin on June 21, 2013 for £1,545,000. The property is held via Absolute Leasehold Title for a term of 999 years that started on June 24, 1976. Based on a review of the title and the existing mortgage by U.K. legal experts, the property could be mortgaged by this Honorable Court to secure Mr. Klyushin's bail, but the process could take a substantial amount of time. In order to secure the funds necessary to post bail more quickly, the defense proposes that with this Honorable Court's permission Mr. Klyushin takes an additional loan collateralized by the property and uses the proceeds of such loan to secure his bail. Alternatively, Mr. Klyushin could sell the property and use the proceeds from the sale to secure his bail. A copy of the U.K. deed has been provided to pretrial services.

1

## II.     Decision of the Switzerland Federal Criminal Court.

The April 30, 2021 Switzerland Federal Criminal Court, Appeals Chamber decision that found detention pending Mr. Klyushin's extradition was warranted was based on the presumption that defendants subject to extradition remain "in custody during the entire extradition proceedings," Decision at 4, and that the proposed monetary bail package of 1,500,000 CHF (approximately $1,650,000) was insufficient. *See* Decision at 9 ("In order to avert the flight risk sufficiently, alternative measures for the arrest with a view to extradition … are only considered suitable in combination with the payment of a substantial bail amount …. [t]he bail in the amount of 1,500,000.00 CHF … is not to be considered substantial."). As an initial matter, Mr. Klyushin is no longer presumed detained and has offered to post substantially more assets ($2.5 million) to secure his bail during the pendency of these proceedings. Moreover, this Honorable Court is not constrained by the bail package that the defense has proposed and can set a monetary bail at any amount it believes appropriate. 18 U.S.C § 3142(c).

While the Switzerland court noted that it could not confirm Mr. Klyushin's financial representations, Decision at 9, Mr. Klyushin declares that he has fully disclosed his assets to pretrial services. Furthermore, as added assurance, Mr. Klyushin proposes that this Honorable Court require, as a condition of bail and prior to his release, for him to produce an audited financial statement prepared by a reputable United States based accounting firm that also has offices in the Russian Federation (*e.g.,* EY, Deloitte) that could conduct a complete financial investigation to confirm his representations. The Swiss court found that it could not "reliably ascertain" Mr. Klyushin's financial resources, however, no attempt to independently confirm Mr. Klyushin's representations

was ever made. This added condition would confirm the accuracy Mr. Klyushin's representations and the adequacy of the proposed monetary bail.

### III.     Russian Citizenship and Extradition.

The Government argues that Mr. Klyushin's Russian citizenship, a country with which the United States has no extradition treaty, is largely dispositive on the issue of bail.  Bail determinations, however, require an individualized assessment of the person standing before the Court. *See e.g., Stack v. Boyle*, 342 U.S. 1, 9 (1951) ("Each defendant stands before the bar of justice as an individual…. [w]hile it might be possible that these defendants are identical in financial ability, character and relation to the charge— elements Congress has directed to be regarded in fixing bail—I think it violates the law of probabilities. Each accused is entitled to any benefits due to his good record, and misdeeds or a bad record should prejudice only those who are guilty of them. The question when application for bail is made relates to each one's trustworthiness to appear for trial and what security will supply reasonable assurance of his appearance."). Indeed, "[t]he bail statute does not [] require that foreign defendants be detained simply because their return cannot be guaranteed through extradition." *United States v. Hansen*, 108 F. App'x 331 (6th Cir. 2004) (affirming district court order of pretrial release of defendant, a resident and citizen of Denmark – from where defendant could not be extradited – charged with bulk cash smuggling and forfeiture).

In *United States v. Bodmer*, No. 03 CR 947 (SAS), 2004 WL 169790, at *1 (S.D.N.Y. Jan. 28, 2004), for example, the defendant a "Swiss national who was arrested while in South Korea on business" and who was charged with conspiring to violate the Foreign Corrupt Practices Act and the Money Laundering Control Act, was released on a

$1 million bond when his assets totaled $2.4 million. The Government argued that the defendant had "a strong incentive to flee because pursuant to Swiss law, the Swiss government will not extradite Swiss nationals" and that the "Swiss government will not recognize [defendant's] written waiver of his right to avoid extradition." *Id.* at *2.  The Government also argued that the defendant's assets were substantially more than he reported, in part, because he was a "Swiss attorney who specializes in offshore accounts and complicated financial transactions [who] likely ha[d] offshore accounts himself." *Id.* The court rejected both of the Government's arguments stating that the issue of unreported assets was based on "mere speculation" and that being a citizen of a non-extraditable country "alone cannot be a basis for denying bail because if taken to its logical conclusion, no Swiss national would ever be eligible for bail." *Id.*  An additional consideration for granting bail in *Bodmer* that is equally applicable here is the fact that the defendant in *Bodmer* was facing serious criminal charges, discovery was expected to be voluminous, and that pretrial release will make it "far easier for [defendant] to assist his counsel in reviewing and responding to discovery if counsel has regular, uninterrupted access to him." *Id.* at *3. As an additional example, in *United States v. Khashoggi*, 717 F. Supp. 1048, 1050-52 (S.D.N.Y. 1989), the court released on bail an "enormously wealthy" Saudi Arabian defendant with limited ties to the United States who was facing trial on mail fraud charges and who "remained abroad as a fugitive for six months" until his arrest and extradition from Switzerland, despite the fact that there was no extradition treaty in place with Saudi Arabia. *Id.* 717 F. Supp. at 1049. *see also Hung v. United States*, 439 U.S. 1326, 1329 (1978) (Brennan, J.) (reversing a post-conviction detention order of a Vietnamese national with limited ties to United States

even though "should applicant flee to Vietnam, the United States would have no means to procure his return...").

Respectfully, the defense submits that there are conditions of release that could reasonably assure Mr. Klyushin's appearance.  Mr. Klyushin has no passport and the Russian consulate has confirmed that they will not issue any travel documents to Mr. Klyushin during the pendency of these proceedings. *See* Letter from Embassy of the Russian Federation, attached hereto as Supplemental Exhibit 1. He has no access to any travel documents. The proposed conditions would require Mr. Klyushin to remain under home confinement and be subject to GPS monitoring. He would only be allowed to see approved visitors, have no access to electronic devices other than a regular phone which he would consent to be monitored by the DOJ, and be subject to random searches. These significant restraints would reasonably assure Mr. Klyushin's appearance while allowing him the opportunity to review what is likely to be voluminous discovery and to prepare his defense to these complicated charges. The Government's concerns about Mr. Klyushin's access to a yacht that could be used to facilitate flight are largely overstated. It is difficult to imagine that Mr. Klyushin, while under significant restraint and surveillance, could arrange such an escape. Regardless, this Honorable Court could, as a condition of bail, require that Mr. Klyushin divest his ownership in the yacht. To the extent the Government is concerned that Mr. Klyushin would reside in close proximity to the Boston Harbor, the defense has also provided pretrial services with an alternative apartment in Brookline, MA that could be rented immediately if Mr. Klyushin is ordered released.

Finally, while the defense does not believe that a private third-party trustee or

security company is reasonably necessary to ensure Mr. Klyushin's appearance, courts have released wealthy defendants who posed a substantial risk of flight under the condition that the defendants retain, at no expense to the Government, a private third-party custodian that could monitor the defendant 24/7 and ensure his appearance at court proceedings. In *United States v. Seng*, 15-cr-706-VSB (S.D.N.Y.), for example, the court released a Chinese national with no ties to the United States, who could not be extradited from China if he fled, and who had enormous wealth (including private airplanes) on the condition, *inter alia*, that he retain a private security company to monitor him and to assure his appearance at trial. *See* Order, *United States v. Seng*, No. 15-cr-706 (S.D.N.Y. Oct. 23, 2015), ECF No. 53 and ECF No. 44. Mr. Seng remained on bail for approximately two years, did not miss a single court appearance, and was even allowed to remain bailed in his apartment after he was convicted at trial and was awaiting sentencing. See Order, *Seng*, No. 1 5-cr-706 (S.D.N.Y. July 27, 2017), ECF No. 570; *see also* Order, *Seng*, No. 15-cr-706 (S.D.N.Y. Aug. 7,2017), ECF No. 616.[1] In sum, there are conditions that could mitigate concerns of flight and reasonably assure Mr. Klyushin's appearance short of pretrial detention. Accordingly, the defense respectfully requests this Honorable Court to release Mr. Klyushin on the proposed bail conditions or any other set of conditions this Honorable Court deems necessary and appropriate to reasonably assure Mr. Klyushin's appearance.

---

[1] The defendant in *Seng*, retained the company Guidepost Solutions, which also has an office in Boston. The defense has been in contact with Guidepost Solutions, who are ready and willing to provide the same 24/7 monitoring services to Mr. Klyushin. Guidepost Solution is primarily staffed by former law enforcement officers, who have the training and expertise to monitor Mr. Klyushin and to assure his appearance at trial.

Respectfully Submitted,
Vladislav Klyushin,
By His Attorney,


**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

Dated: January 4, 2022

## **CERTIFICATE OF SERVICE**

I, Maksim Nemtsev, hereby certify that on this date, January 4, 2022, a copy of the foregoing documents has been served via Electronic Court Filing system on all

**/s/ Maksim Nemtsev**
Maksim Nemtsev
