```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3   UNITED STATES OF AMERICA,        )
                     Plaintiff,       )
 4                                    )
     vs.                              ) No. 21-CR-10104-PBS-1
 5                                    )
     VLADISLAV KLYUSHIN,              )
 6                   Defendant.       )

 7

 8

 9

10
            BEFORE THE HONORABLE MARIANNE B. BOWLER
11                UNITED STATES MAGISTRATE JUDGE
        ARRAIGNMENT/DETENTION HEARING BY VIDEOCONFERENCE
12

13

14

15       John Joseph Moakley United States Courthouse
                       One Courthouse Way
16              Boston, Massachusetts 02210

17
                         January 5, 2022
18                         1:08 p.m.

19

20

21
                Kathleen Mullen Silva, RPR, CRR
22                   Official Court Reporter
         John Joseph Moakley United States Courthouse
23              One Courthouse Way, Room 7209
                 Boston, Massachusetts 02210
24              E-mail: kathysilva@verizon.net

25         Mechanical Steno - Computer-Aided Transcript
```

```
 1   APPEARANCES:
 2
 3         United States Attorney's Office
 4         AUSA Seth B. Kosto
 5         AUSA Stephen E. Frank
 6         John Joseph Moakley U.S. Courthouse
 7         Boston, Massachusetts 02210
 8         617.748.3244
 9         for the Government
10
11         Maksim Nemtsev, Esq.
12         20 Park Plaza, Suite 1000
13         Boston, Massachusetts 02116
14         347.251.4800
15         for the Defendant
16
17
18
19
20
21
22
23
24
25
```

P R O C E E D I N G S

THE CLERK: The United States District Court is now in session, the Honorable Marianne B. Bowler presiding. Today's date is January 5, 2022 in the case of the United States v. Vladislav Klyushin, Criminal Action No. 21-10104-PBS.

The parties are reminded that any photography, recording, or rebroadcasting of court proceedings may result in sanctions as deemed appropriate or necessary by the court.

Will counsel please identify yourself for the record starting with the government.

MR. KOSTO: Good afternoon, Your Honor. Seth Kosto and Stephen Frank for the United States.

THE COURT: Thank you.

MR. NEMTSEV: Good afternoon, Your Honor. Maksim Nemtsev on behalf of Mr. Klyushin.

THE COURT: Thank you very much.

Good afternoon, Mr. Klyushin. I'm Magistrate Judge Bowler. Can you see me and can you hear me?

THE DEFENDANT: Good afternoon, Your Honor. I can see and hear you wonderfully.

THE COURT: We're here for your arraignment and continued detention hearing, and you're appearing in court today via video link. Let me begin by describing the arrangements that have been set up for this hearing. Your

1    lawyer, the prosecutors, the courtroom deputy, the court
2    reporter, the probation officer, and the court are all in
3    different locations today.
4            If you have any difficulty with either the video or
5    audio connection, that is, if at any time you cannot see or
6    hear what's happening, please speak up immediately or wave your
7    hand.  Do you understand?
8            THE DEFENDANT:  Yes, Your Honor.
9            THE COURT:  We'll stop the proceeding immediately and
10   correct the technical problem.  And if you want anything
11   repeated either by me or by the interpreter, just let me know.
12   Do you understand?
13           THE DEFENDANT:  Yes, Your Honor.
14           THE COURT:  And if at any time during this hearing you
15   wish to speak with your attorney, just let me know by speaking
16   up or waving your hand and I will arrange for the two of you to
17   speak privately.  Do you understand?
18           THE DEFENDANT:  Yes, Your Honor.
19           THE COURT:  I also want you to know that the court
20   reporter is making a record of this proceeding, and if we need
21   a transcript, it can be prepared.
22           I want to explain something to you about why you are
23   appearing today via video link for this hearing.  You have the
24   right to be physically present in open court for this hearing
25   but you can waive that right.  Before I ask you whether or not

1  you intend to waive your right to be physically present, you
2  should know the following: our normal procedure until 22 months
3  ago was to have all defendants physically present in the
4  courtroom for this type of hearing.  Today is January 5, 2022,
5  and, as I am sure you are aware, we are still in the midst of a
6  pandemic caused by the coronavirus.
7           In the Federal Court, we are attempting to protect the
8  health and safety of everyone.  If you were brought to the
9  courthouse today, you might be transported in close quarters
10 with other people.  The transportation of defendants to and
11 from the courthouse for court proceedings increases the health
12 risks for everyone involved, including the defendants, the
13 lawyers, court personnel, security officers, and the drivers.
14 Then, when you arrived at the courthouse, you could be placed
15 in a cell with other people, possibly exposing you to the
16 virus.  So we're trying to protect everyone from getting sick
17 and passing the virus to other people while at the same time
18 we're trying to conduct these proceedings in the safest
19 possible manner for everyone involved.
20          To minimize the health risks, among other things,
21 we're giving the defendants the option of appearing via video
22 link.  At this point it is voluntary.  You do not have to
23 appear by video.  So I'm going to go through some questions
24 with you to make sure that you understand your right to appear
25 in person and to make sure that you understand you can waive

1  that right.
2          Do you understand everything I've said up to this
3  point?
4          THE DEFENDANT:  Yes, Your Honor.  I understood
5  everything.
6          THE COURT:  Do you understand that you have the right
7  to be physically present in open court for this hearing?
8          THE DEFENDANT:  Yes, Your Honor, I do understand.
9          THE COURT:  And have you discussed the fact that
10 you're appearing via video link with your attorney?
11         THE DEFENDANT:  Yes, Your Honor, I did discuss it.
12         THE COURT:  And do you understand that you have the
13 right to consult privately with your attorney at any time
14 during this proceeding?  All you have to do is let me know by
15 speaking up or waving your hand and I will arrange for the two
16 of you to speak privately.
17         THE DEFENDANT:  Yes, Your Honor.
18         THE COURT:  And do you understand that the courtroom
19 is not closed?  It is still public.  So even though you are
20 appearing by video, your family members and other supporters
21 have the right to attend this hearing electronically.  Do you
22 understand?
23         THE DEFENDANT:  Yes, I understand, Your Honor.
24         THE COURT:  And do you agree to waive your right to
25 appear in person and instead agree to appear by video today?

```
 1              THE DEFENDANT:  I do agree, Your Honor.
 2              THE COURT:  Thank you.
 3              Mr. Nemtsev, have you discussed the waiver with your
 4    client and is there any reason why I should not accept his
 5    waiver?
 6              MR. NEMTSEV:  I have discussed it with my client, Your
 7    Honor, and there's no reason not to accept his waiver.
 8              THE COURT:  Thank you.  I find that the defendant has
 9    knowingly and voluntarily waived his right to appear at this
10    hearing in person.  I find that requiring the defendant to be
11    present would jeopardize the public health and safety of those
12    who would be present with the defendant during the court
13    proceeding and during his transportation to and from the
14    courthouse.  I further find that additional delay would
15    jeopardize the interests of justice because it is necessary to
16    conduct this hearing promptly to protect the constitutional and
17    legal rights of the defendant.  I accept the waiver and we will
18    now proceed with the continued detention hearing and the
19    arraignment of the defendant.
20              All right.  I have had submissions from the government
21    and from the defense.
22              Do you wish to be heard?  Mr. Kosto first.
23              MR. KOSTO:  Your Honor, very briefly.
24              The authorities that Mr. Nemtsev cites in his
25    memorandum really bring to a nice summary the government's
```

1  position on detention.  Our position is not simply that as a
2  Russian citizen who is not subject to extradition, Mr. Klyushin
3  poses a flight risk and that there are no condition or
4  combination of conditions that can assure his appearance.  All
5  the cases in Mr. Klyushin's memorandum point to factors that
6  the Court takes together which evaluate the ties that a
7  defendant has to the United States.
8       So in the *Bodmer* case that's cited in Mr. Nemtsev's
9  memorandum, the defendant had friends in Washington, D.C. who
10 were willing to post a house as security for his appearance.
11 In the *Khashoggi* case cited, again the defendant had family,
12 including at least one child and two siblings.  The defendant
13 owned property in the United States.  This isn't an invitation
14 for negotiation in terms of numbers but in the *Seng* matter,
15 which resulted in the defendant's release under armed guard,
16 the court held that it was a 50-million-dollar personal
17 recognizance bond secured by 20 million dollars in property,
18 including property in the United States that provided adequate
19 conditions.
20      We have a defendant, as we indicated back in December,
21 with no ties to the United States, with no family, with no
22 community here, with no history of visiting the United after
23 being a tourist some ten years earlier with no employment.  A
24 defendant who did not, as in the *Khashoggi* case, consent to
25 extradition and come here to face these charges.

1      The complete picture, not simply his citizenship or
2 nationality, is what creates the lack of a condition or
3 combination of conditions that would assure his appearance.
4      Thank you, Your Honor.
5      THE COURT:  And Mr. Nemtsev.
6      MR. NEMTSEV:  Just very briefly, Your Honor, in the
7 *Seng* case, Mr. Seng was released on a 50-million-dollar bond,
8 but he was also a billionaire.  The bond was set commensurate
9 with his wealth.  The apartment that he had in New York City,
10 while he had some financial ties to the United States, it was
11 undergoing foreclosure proceedings at the time.  And despite
12 his citizenship -- despite the fact that he used his wealth to
13 purchase citizenship in Dominica, it was regardless found that
14 there are conditions that are less severe than pretrial
15 detention that could reasonably assure his appearance at trial.
16      Of course, every case is individual and every
17 defendant is individualized.  Mr. Klyushin doesn't have any
18 family or any real estate in the United States, but that's not
19 through any fault of his own, meaning some defendants have
20 greater connections, some have less.  But just because he has
21 ties to the Russian Federation doesn't mean that he should be
22 presumed or detained.
23      He's offered, unlike the defendant in *Bodmer*, unlike
24 the defendant in *Khashoggi*, to be under house arrest.
25      THE COURT:  Khashoggi is the pronunciation.

1        MR. NEMTSEV:  Khashoggi, I'm sorry, Your Honor.
2        He's offered to be under home confinement.  Those
3   defendants all had some limited ties to the United States.  In
4   *Bodmer*, he had family and friends but no one described how
5   close his connection was, and he was allowed to go out on bail
6   with a GPS monitor and to travel and to leave the house.
7        In *Khashoggi*, Your Honor, he had some family in the
8   United States, but most of his family, his wife lived in
9   France, three out of his four siblings lived abroad.  Most of
10  his children lived abroad.  He had some financial ties, but not
11  extreme ties to the United States.  And he was also a Saudi
12  Arabian citizen who had multiple millions of dollars and
13  residences across the world.  And even in that case, they found
14  that bail was appropriate and could be given to the defendant.
15       I do want to mention some of the cases that the
16  government cites.  It cites them primarily for the purpose that
17  defendants with connections to the Russian Federation have been
18  detained.  But the cases are also starkly different than the
19  situation that Mr. Klyushin faces.
20       For example, in the *Shuklin* case, Your Honor, it
21  wasn't just his ties to the Russian Federation but also his use
22  of false identification documents that led to his detention.
23  Mr. Klyushin, on the other hand, has traveled exclusively in
24  his own name, held accounts in his own name and never procured
25  or used any false identification.

1          In the *Fishenko* case in the Eastern District of New
2    York, the defendant was charged with obstruction of justice and
3    he was found not to be able to comply with government orders.
4    And he was also found to be dangerous, something that's not
5    alleged of Mr. Klyushin here.  The defendant in *Fishenko*, he
6    exported military goods to foreign governments.
7          Finally, the *Kachkar* case from the Eleventh Circuit,
8    one of the issues there was not only the fact that he was a
9    flight risk because of his connection to the Russian Federation
10   but also because he transferred almost all of the hundred
11   million dollars that he was alleged to have stolen from
12   accounts in the U.S. to foreign accounts.  And that was one of
13   the bases that led to his detention.  It was essentially an
14   indication that he intends to flee.
15         I have nothing further, Your Honor.
16         THE COURT:  All right.  You submitted to me a packet
17   of letters.
18         MR. NEMTSEV:  I did, Your Honor.
19         THE COURT:  Have they been made part of the record?
20         MR. NEMTSEV:  They are, Your Honor.
21         THE COURT:  Ms. Belpedio, do we have them as an
22   exhibit to the hearing?
23         THE CLERK:  I'm not sure.
24         THE COURT:  I don't think so.  So they should be
25   marked as Defendant's Exhibit 1 for the purpose of the hearing.

```
 1   And also the document from the Embassy in Washington, which was
 2   submitted directly to me.
 3             Do you have a copy of that, Mr. Kosto?
 4             MR. KOSTO:  We did receive a copy, Your Honor, yes.
 5             THE COURT:  All right.  That should be marked Exhibit
 6   2, Defendant's Exhibit 2 for the purposes of the detention
 7   hearing.
 8             (Defendant's Exhibit No. 1 received into evidence.)
 9             (Defendant's Exhibit No. 2 received into evidence.)
10             THE COURT:  At this time I will move to arraignment.
11             Mr. Nemtsev, have you reviewed the indictment with
12   your client?
13             MR. NEMTSEV:  I have, Your Honor.  My client has the
14   indictment in both English and Russian, and we have reviewed
15   it.
16             THE COURT:  Have you explained the nature of it to
17   him?
18             MR. NEMTSEV:  I have, Your Honor.
19             THE COURT:  Does he understand it?
20             MR. NEMTSEV:  He does, Your Honor.
21             THE COURT:  Is he prepared to be arraigned here today?
22             MR. NEMTSEV:  He is, Your Honor.
23             THE COURT:  Does he waive the reading of the
24   indictment in its entirety?
25             MR. NEMTSEV:  He does, Your Honor.
```

```
 1              THE COURT:  And the maximum penalty, Mr. Kosto?
 2              MR. KOSTO:  Yes, Your Honor.  As to Count One, the
 3   conspiracy count, five years imprisonment, a $250,000 fine or
 4   twice the gross gain or loss, $100 special assessment, three
 5   years supervised release and forfeiture and restitution.
 6              The wire fraud count, Count Two, 20 years
 7   imprisonment, a $250,000 fine or twice the gross gain or loss,
 8   a $100 special assessment, three years supervised release,
 9   forfeiture and restitution.
10              Count Three, the unauthorized access to computers in
11   furtherance of fraud, a five-year maximum term of imprisonment,
12   $250,000 fine, $100 special assessment, three years supervised
13   release, forfeiture and restitution.
14              And finally, the Title 15 securities fraud offense, a
15   maximum of 20 years imprisonment, a 5-million-dollar fine, a
16   $100 special assessment, three years supervised release, and
17   forfeiture and restitution as charged in the indictment.
18              THE COURT:  Thank you.
19              Ms. Belpedio, would you please proceed.
20              THE CLERK:  As to Count One charging you with
21   conspiracy to obtain unauthorized access to computers and to
22   commit wire fraud and securities fraud in violation of 18
23   U.S.C. Section 371, how do you plead, guilty or not guilty?
24              THE DEFENDANT:  Am I suppose to answer, Your Honor?
25              THE COURT:  Yes.  Guilty or not guilty?
```

1         THE DEFENDANT:  Absolutely not guilty.
2         THE COURT:  Thank you.
3         THE CLERK:  As to Count Two charging you with wire
4    fraud and aiding and abetting in violation of 18 U.S.C. Section
5    1343 and Section 2, how do you plead, guilty or not guilty?
6         THE DEFENDANT:  Not guilty.
7         THE CLERK:  As to Count Three charging you with
8    unauthorized access to computers and aiding and abetting in
9    violation of 18 U.S.C. Section 1030 and Section 2, how do you
10   plead, guilty or not guilty?
11        THE DEFENDANT:  Not guilty.
12        THE COURT:  And as to Count Four charging you with
13   securities fraud and aiding and abetting in violation of 15
14   U.S.C. Section 78, and 17 C.F.R. Section 240.10b 5, how do you
15   plead, guilty or not guilty?
16        THE DEFENDANT:  Not guilty.
17        THE CLERK:  Thank you.
18        THE COURT:  How many witnesses does the government
19   intend to call, and what's the probable length of trial?
20        MR. KOSTO:  Your Honor, we'd estimate between 20 and
21   25 witnesses, approximately two, two and a half weeks, assuming
22   half days.
23        THE COURT:  All right.  We'll have an initial status
24   conference February 8 at 11:00.
25        Now, turning to the issue of detention, there are some

points that I would like to make.

I have carefully reviewed all of the submissions by both parties, and the extensive pretrial services report. As to certain items I would make some comments.

The defendant submitted a series of letters written by his wife and acquaintances. None of the letters indicate an address for the individual or how that individual could be contacted to verify the contents of the letter. Nor do the letters mention that the writer is aware of the details of the crime for which the defendant is charged, nor is it clear whether these letters were written in English or Russian. And if they were written in Russian, how they were translated. And the court notes that the majority of them all start with a strangely similar format, and, therefore, I do not give heavy weight to them.

I also note that the defendant has provided to pretrial services a list of assets. There is no way for pretrial services or this court to verify that list. The assets are not visible to the court in a transparent and verifiable manner. Defense counsel in his filing suggests that an audit could be performed by a U.S. firm operating in Russia. But, again, this individual is a sophisticated businessman and we have no idea in how many countries his assets could be placed.

This court also notes the submission from the Embassy

1  of the Russian Federation in Washington, D.C. which indicates
2  that it will, and I quote, "not assist in concealing or
3  removing" the defendant out of the jurisdiction of the court.
4  In over three decades on the bench, and having had numerous
5  cases of individuals of foreign nationality arrested here or
6  through extradition, have I ever seen a document of this sort.
7  It's unclear to me whether it was solicited, and I just note
8  that it's unusual.
9           I also note that there is always the possibility of
10 obtaining false travel documents to exit a country, and this
11 court has seen that on numerous occasions.
12          The defendant is a sophisticated foreign national from
13 a country from which he cannot be extradited.  He has property
14 in Russia, in the UK, a yacht purchased for close to 4 million
15 dollars, and other assets as outlined in the pretrial services
16 report and perhaps assets not outlined.
17          Importantly, he is sophisticated in travel and
18 familiar with international travel, having visited numerous
19 countries on five continents, including the use of private
20 jets, helicopters, and significantly he is trained in the law.
21          This court agrees with the conclusion of pretrial
22 services that the defendant presents a substantial risk of
23 flight.  After reviewing all of the evidence before the court
24 and noting that the weight of the case is strong, this court
25 concludes by a fair preponderance of the evidence that there

```
 1   are no conditions or combination of conditions that will assure
 2   the appearance of the defendant.
 3              The defendant is ordered detained.
 4              Anything else from the government?
 5              MR. KOSTO:  Your Honor, our next step will be to
 6   arrange for a Rule 16.1 conference with Mr. Nemtsev to discuss
 7   the production of discovery and the electronic evidence that
 8   we've obtained in the investigation.  That will take place in
 9   the next 14 days pursuant to the rule.
10              THE COURT:  Mr. Nemtsev?
11              MR. NEMTSEV:  Nothing else from me, Your Honor.
12              THE COURT:  All right.  We stand in recess.
13              MR. NEMTSEV:  Thank you.
14              THE COURT:  Stay safe and stay well.
15   (Proceedings adjourned at 1:32 p.m.)
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3

 4    UNITED STATES DISTRICT COURT )

 5    DISTRICT OF MASSACHUSETTS    )

 6

 7

 8           I certify that the foregoing is a correct transcript

 9    from the record of proceedings taken January 5, 2022 in the

10    above-entitled matter to the best of my skill and ability.

11

12

13

14

15    /s/ Kathleen Mullen Silva                         1/5/22

16

17    Kathleen Mullen Silva, RPR, CRR                   Date
      Official Court Reporter
18

19

20

21

22

23

24

25
```