UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

VLADISLAV KLYUSHIN,
  a/k/a "Vladislav Kliushin"
IVAN ERMAKOV,
  a/k/a "Ivan Yermakov," and
NIKOLAI RUMIANTCEV,
  a/k/a "Nikolay Rumyantsev,"

      Defendants

21-cr-10104 (PBS)

## MOTION IN LIMINE CONCERNING DEFENSE HEARSAY OBJECTION TO SEVERAL LINES IN EXHIBIT 46

Last week, the defendant objected to the admission of Exhibit 46, a four-way group chat on the encrypted messaging app Threema involving the defendant, Ivan Ermakov, Nikolai Rumiantcev, and a fourth individual. The defendant withdrew that objection after the government objected on hearsay grounds to the defense offering segments of the chat as defense exhibits. The issue thus resolved, the defense opened by displaying portions of the chat to the jury.

Now, on the eve of the government's admission of the chat into evidence, the defense seeks to preclude the government from introducing several lines from the chat on purported hearsay grounds, because those statements were uttered by an individual who has not been identified. The objection is meritless. The challenged lines are admissible as nonhearsay on multiple grounds—including to provide context for the defendant's own statements in response—and the fact that the declarant is unidentified has no bearing on this analysis, as the First Circuit has made clear.

First, the statements to which the defense objects are not hearsay because they simply complete the narrative and provide context for the defendant's own statements. *See United States v. Walter*, 434 F.3d 30, 34 (1st Cir. 2006) ("In several cases, we have held that when statements are offered only to provide context and not for the truth of the matter asserted, those statements are not hearsay."). Here, the statements to which the defense objects are part of a single portion of Exhibit 46 that spans seven minutes and involves the defendant, Ermakov, Rumiantcev, and the unidentified fourth participant (who joined the chat earlier that day). During the relevant portion, the participants are discussing where to open brokerage accounts for their trading while minimizing the risk of attracting scrutiny from securities regulators or the brokerages themselves. Klyushin asks, "Kolya, why won't we open on Interactive Brokers [a U.S. brokerage] by ourselves? Just for information." Rumiantcev responds, "To be brief, because the support is practically absent in Russia. And the broker will see all our transactions. We don't fucking need it." The unidentified individual also responds to Klyushin, and says, "Most likely from fear of direct trading and client visibility. For SEC." Rumiantcev then responds again, "I mentioned it earlier: And the broker will see all our transactions. The fuck we need this. Now all our transactions are blended among all OBL clients." Ermakov responds: "Broker sees it even now and can follow up on it, the regulator is much more important here)." The unidentified individual replies, "Europe in this regard is probably more preferable - though the question remains to what extent they cooperate with the American SEC." Klyushin responds: "Our people from Switzerland say that they're blocking accounts with no questions asked for six months if the profits are above 20%."

2

Klyushin's and Ermakov's statements make no sense if the statements of the fourth participant are redacted. In particular, Klyushin's statement about Switzerland blocking accounts if profits exceed 20% comes *in direct response* to the fourth participant's statement that Europe is probably a preferable location for a brokerage account. Without the context of the statement to which Klyushin is responding, Klyushin's own statement makes no sense. Likewise, the fourth participant's response to Klyushin's earlier inquiry—that the reason they do not use Interactive Brokers is "[m]ost likely from fear of direct trading and client visibility. For SEC"—completes the narrative and is admissible for the additional reason that it provides notice to the defendant that their trading would be visible to the SEC, a possibility that the conspirators clearly view as problematic. The statement also provides context for Ermakov's response that the "[b]roker sees it even now and can follow up on it, the regulator is much more important here." Again, Ermakov's statement that the regulator is more important loses its meaning absent the prior statement that the trading would be visible to the SEC.

The situation is no different than if a defendant accused of purchasing illegal drugs had been intercepted on a wiretap discussing the deal with an unknown individual. The statements of the unknown individual would plainly be admissible to provide context for the statements of the defendant. Likewise, if the unknown individual expressed concern about where to consummate the deal "for fear of visibility from the DEA," those statements would be admissible as notice to the defendant that their transaction was illegal. Nor does the fact that the identity of the fourth participant is unknown affect this analysis, as the First Circuit has explicitly noted in the context of admitting statements under Rule 801(d)(2)(E). *See United States v. Merritt*, 945 F.3d 578, 586 (1st Cir. 2019) ("The person on the phone doing the arranging, whoever that was, made each

3

statement in furtherance of a criminal conspiracy."). Now, consider, that the unknown speaker on the call expressing worry about the DEA is unidentifiable because he uses a burner phone that he later discards. Ironically, under the defendant's argument, it is the fact that the speaker has taken steps to hide his identity—by using a burner—because he knows he is discussing illegal conduct, that purportedly makes the statement hearsay. So too here: the fourth speaker is not identifiable because the defendant and his co-conspirators are using Threema. And that is precisely why they later chastise the defendant for "exposing our organization."

Second, and relatedly, the statements to which the defense objects are in any event nonhearsay. The unidentified individual's statement that "the question remains to what extent they [European brokers] cooperate with the American SEC," is a question. *See United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003) ("[A] question is typically not hearsay because it does not assert the truth or falsity of a fact. A question merely seeks answers and usually has no factual content."). Likewise, the individual's earlier statement that they have not opened accounts at Interactive Brokers "[m]ost likely from fear of direct trading and client visibility. For SEC," is an opinion. "So long as out-of-court statements are not offered for their truth, they are not hearsay and it is unnecessary to fit such statements into one particular category." *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999) (finding that instructions given by one conspirator to another were not offered for truth).

Third, the objected-to statements are non-hearsay because, taken in the context of the conversation, they are relevant evidence of the existence of the conspiracy itself. *See Anderson v. United States*, 417 U.S. 211, 228 (1974) (out-of-court statements which are not offered for their truth are not hearsay, and, as such, are admissible if relevant to prove the conspiracy,

regardless whether the requirements of the co-conspirator hearsay exception rule are met).  *See also United States v. Munson*, 819 F.2d 337 (1st Cir. 1987) (statements of coconspirators not offered for the truth admissible "as long as they were relevant in some way to prove the conspiracy charged").  Here, the very fact that the conspirators are discussing how to evade regulatory and broker scrutiny is highly probative of the existence of the charged conspiracy.  So, too, is the defendant's admission that in Switzerland, accounts are being blocked if they generate profits above 20%.

      Fourth, as the government has previously argued, the statements are also presumptively admissible as co-conspirator statements under Rule 801(d)(2)(E).  In an earlier portion of the call, where Ermakov and Rumiantcev discuss admitting the fourth participant to the conversation, Ermakov writes, "Greetings! I created a group and added here another person. I invite to write and discuss all issues concerning trading and topics related to it here."  Rumiantcev responds, "Can you tell at least in general who is this third person?"  Ermakov replies, "This is my colleague, he is completely on top with the subject, you can trust him as you trust me, and if you want you can check with Vlad."  At that point, Rumiantcev insists on adding the defendant to the discussion, noting that "quite often we need to explain him [the defendant] something that we have already discussed in the chat.  But this way he will be reading it on his own."  Tellingly, the defendant and the fourth participant *both* join the chat within 30 minutes of each other, and the challenged statements happen later that same day.

      While a co-conspirator statement cannot, by itself, establish by a preponderance of the evidence the existence of a conspiracy embracing both the declarant and the defendant, *see United States v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir. 1993), the Court may consider the

5

statement in making such a determination, *see, e.g., Bourjaily v. United States*, 483 U.S. 171, 181 (1987); *United States v. Rivera-Santiago*, 872 F.2d 1073, 1092-93 (1st Cir. 1989). Here, the fact that the fourth participant, in the challenged lines, is discussing avoiding regulatory scrutiny is itself probative of his membership in the charged conspiracy with the defendant and the other participants in the call. The fact that Ermakov, Klyushin's close friend and co-conspirator, vouches for the unidentified individual by telling Rumiantcev that he can "can trust him as you trust me," supplies additional proof of the fourth participant's membership in the conspiracy (and of the trust between the charged coconspirators Ermakov and Rumiantcev). So, too, does Ermakov's subsequent statement that Rumiantcev can "check with Vlad." And the remainder of Exhibit 46—which as the defense has noted spans a period of nine months and culminates with the participants terminating the chat and agreeing to delete it from their devices after Klyushin compromises their identities—provides still more evidence of their agreement. Indeed, Ermakov concludes the chat by admonishing the defendant, "Vlad, you are exposing our organization. This is bad"— itself proof that the conspiracy includes others beyond the four participants in the chat—and adding, "[T]hat's how they get you and you end up as a defendant in a court room."

## Conclusion

For the foregoing reasons, the government respectfully requests that the defendant's objection to six lines of Exhibit 46 be denied.

                                            Respectfully submitted,

                                            RACHAEL S. ROLLINS
                                            United States Attorney

                                   By: */s/ Stephen E. Frank*
                                            STEPHEN E. FRANK
                                            SETH B. KOSTO
                                            Assistant U.S. Attorneys

Date:   February 2, 2023