1          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
2

3     UNITED STATES OF AMERICA,            )
                                           )
4               Plaintiff                  )
                                           )
5          -VS-                            )   Criminal No. 21-10104-PBS
                                           )   Pages 1 - 39
6     VLADISLAV KLYUSHIN,                  )
                                           )
7               Defendant                  )

8
                    **JURY TRIAL – DAY EIGHT**

9
                    **=CHARGE CONFERENCE–**

10

11          BEFORE THE HONORABLE PATTI B. SARIS
               UNITED STATES DISTRICT JUDGE
12

13

14
                              United States District Court
15                            1 Courthouse Way, Courtroom 19
                              Boston, Massachusetts  02210
16                            February 8, 2023, 2:47 p.m.

17

18

19

20

21

22                    LEE A. MARZILLI
                   OFFICIAL COURT REPORTER
23               United States District Court
                 1 Courthouse Way, Room 7200
24                  Boston, MA  02210
                     leemarz@aol.com
25

1    A P P E A R A N C E S:

2        SETH B. KOSTO, ESQ. and STEPHEN E. FRANK, ESQ.,
     Assistant United States Attorneys, Office of the United States
3    Attorney, 1 Courthouse Way, Room 9200, Boston, Massachusetts,
     02210, for the Plaintiff.
4
         MAKSIM NEMTSEV, ESQ., 20 Park Plaza, Suite 1000,
5    Boston, Massachusetts, 02116, for the Defendant.

6        MARC FERNICH, ESQ., Law Office of Marc Fernich,
     800 Third Avenue, Suite Floor 20, New York, New York, 10022,
7    for the Defendant.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1

2          THE COURT:  Okay, I hope you all had a nice lunch.

3    Please be seated.

4          Okay, so we begin with the jury verdict form.  Does

5    anyone have a problem with it?  I will change Count One.  I

6    think the government was right when they said it should be "to

7    access computers or to commit wire fraud or to commit

8    securities fraud."  But other than that, does anyone have a

9    problem with the verdict form?

02:48 10          MR. FERNICH:  No.

11          THE COURT:  Oh, I had actually a question for the

12   defendant on this because the way it's charged in the

13   indictment, and this is something I didn't know if you wanted

14   to sanitize the indictment --

15          NEMTSEV:  Yes.

16          THE COURT:  Is there a/k/a's?

17          MR. FRANK:  It's just an alternate spelling of his

18   name.

19          THE COURT:  In fact there's something -- that's even

02:48 20   wrong, but I thought we would just get rid of the a/k/a's.  And

21   that should probably come out of the indictment too, but I did

22   think it should include the three of them, right?

23          MR. NEMTSEV:  And, Judge, would it make sense to,

24   rather than CC-1, put in Mr. Sladkov and Mr. Irzak just for

25   clarity?

1          THE COURT:  That's not on the verdict form.

2          MR. NEMTSEV:  Oh, sorry, sorry.  I thought we were

3     talking about the indictment.

4          THE COURT:  Well, I'll get to that in a minute.  I'm a

5     step-by-step kind of person, so --

6          So other than that, is there anything I missed?  I've

7     got the conspiracy in Count One, wire fraud, aiding and

8     abetting, unauthorized access to computers, aiding and

9     abetting, securities fraud, aiding and abetting, and

02:49 10   specifically not a question about venue.  That's what you all

11    want?

12         MR. FERNICH:  No objection.

13         MR. KOSTO:  Correct, your Honor.  When appropriate,

14    there is a venue-related issue we'd like to raise, though.

15         THE COURT:  Don't forget, I'm step by step.

16         MR. KOSTO:  Exactly.

17         THE COURT:  The verdict form is fine?

18         MR. FERNICH:  Yes.

19         THE COURT:  Good.  Now, with respect to the

02:50 20   indictment, have you had a chance to work together -- maybe you

21    haven't -- just to clean up the indictment?  We do need to send

22    it in, but there may be certain aspects like the a/k/a's that

23    you might want to discuss, so I urge you to do that.  I don't

24    think we need to address that here because I don't think you're

25    ready, right?  But we will have to send in the indictment.

1          MR. KOSTO:  We'll connect and discuss.

2          THE COURT:  All right, now, with respect to the jury

3     charge, why don't I start with the government's objections.  As

4     you both agree, there was a typo, so I will fill it in with the

5     way the government -- I'm just going from Page 1 -- I will fix

6     Page 3 of Instruction 16, which was a typographical error.

7     Okay, all right.  And then there was -- and I think the

8     government is correct, that's what I meant to say.

9          MR. KOSTO:  Your Honor, on Page 2 of Instruction 15,

02:51 10    at Line 442 --

11          THE COURT:  Wait, wait.  Say it again.  I'm sorry.

12          MR. KOSTO:  I think maybe this is the one you've

13    addressed, but this is the "or, or, or" in the instructions as

14    distinguished from the verdict sheet.

15          THE COURT:  Yes, yes, I'm sorry, I -- yes, that's

16    right.  I agree with that.

17          MR. KOSTO:  Okay.

18          THE COURT:  I will use the disjunctive.

19          Okay, Instruction 17, you object to multiple

02:52 20    conspiracies.  Did you want to say anything more than what was

21    in this brief?  I do agree I'm going to strike what Klyushin

22    intends, but I am going to give something on multiple

23    conspiracies.

24          MR. FRANK:  We understand that, your Honor.  We

25    thought it could be shorter.  My concern about the last

          1    sentence is that it is a little confusing.  It sort of

          2    resembles the test that courts apply when evaluating whether

          3    there are multiple conspiracies, but it's incomplete, and we

          4    don't think that's the test, in any event, that juries apply.

          5    And so we think that the simpler instruction that the First

          6    Circuit has approved is more clear, but that, in any event, the

          7    two instructions, this instruction would be closer to the First

          8    Circuit instruction without that last sentence.

          9         THE COURT:  I think arguably -- I don't know if you

02:53    10    want to respond to those.

         11         MR. FERNICH:  Yes.  You know, we took it straight from

         12    Sands, and this is also in the nature of a "theory of defense"

         13    charge, and we're entitled to a charge on any theory of defense

         14    that has foundation in the record.  So I would object to

         15    truncating this.  It's important to us, and this one and

         16    partial venue --

         17         THE COURT:  As a matter of law -- I was thinking this

         18    through -- the conspiracy charged involves five people,

         19    Ermakov, Rumiantcev, the defendant, Irzkov, and Sladkov, "and

02:53    20    others."

         21         MR. FRANK:  We disagree with that, your Honor.

         22         THE COURT:  Those are the only people mentioned, "and

         23    others."

         24         MR. FRANK:  But in the count, there's only three

         25    people specifically mentioned, and the others are specifically

1    not mentioned.  We believe that they are coconspirators.

2         THE COURT:  Well, you've alleged two unindicted

3    coconspirators.

4         MR. FRANK:  But not in the count, and so we don't

5    believe that it is our burden to prove that the conspiracy

6    encompasses them.  We believe they're relevant and they come in

7    under --

8         THE COURT:  Does the count refer to "others"?

9         MR. FRANK:  "Known and unknown."

02:54 10        THE COURT:  Yes, it always does.

11        MR. FRANK:  Correct.

12        MR. FERNICH:  And it incorporates everything else by

13   reference.

14        THE COURT:  In any event, I'm likely to keep this

15   charge in there.  I think you could find that there were two

16   running parallel conspiracies with the same goal to hack.  On

17   the other hand, it more than adequately supports the

18   government's case that it's one conspiracy, since they all

19   traded in parallel, and I'll just do this.  Speaking of which,

02:54 20   I do -- see, this is why I had asked for, and didn't get, a

21   proffer on the conspiracy.  And then I do find under the law --

22   the First Circuit calls it *Petrozziello* -- that there is

23   probable cause to believe that the conspiracy includes at least

24   five people.  It's up to the jury to decide whether there are

25   two conspiracies.

1          All right, so the next one is good faith.  I always

2     give a good-faith instruction.

3          MR. KOSTO:  And if the Court were to do that, we'd

4     simply ask that it give the good-faith instruction in one place

5     and not with respect to each count.

6          MR. FRANK:  Our objection is to repeating it three

7     separate times.

8          THE COURT:  I don't know.  I don't know if I'm being

9     redundant or not.  I just copied basically their good faith

02:55 10     instruction.

11          MR. FRANK:  Right, but our objection is to the fact

12     that it's given three separate times.

13          THE COURT:  I don't know.  I'll think about that.

14     It's not a big point.  Good faith is clearly part of any case.

15          All right, now, definition of protected computer, did

16     you have a problem with the government's suggestion that

17     anything over the Internet is interstate commerce?

18          MR. FERNICH:  No.

19          THE COURT:  What?

02:56 20          MR. FERNICH:  No.

21          THE COURT:  Okay, that comes in, and that's Jury

22     Instruction 21.  That makes sense.  I think it makes it simpler

23     for the jury, and it's correct, more importantly.

24          You both agreed on this, and this is the part I was

25     worried about with materiality -- excuse me -- with things

1  being too wordy, is that the standard securities fraud,

2  materiality does not apply to a hack and trade kind of case,

3  and I agree with both of you that the "reasonable investor"

4  language needs to come out of it.

5      MR. KOSTO:  There is a single sentence, your Honor, on

6  Page 3 of Instruction 25 which concerns the second element.

7  That sentence at the top, this is -- I've lost the line

8  numbers --

9      THE COURT:  Yes, we did, yes.

02:57 10      MR. KOSTO:  "A misstated or omitted fact is material

11  if there is a substantial likelihood that the disclosure of the

12  omitted fact would have been viewed by a reasonable person as

13  having significantly altered the total mix of information made

14  available."  We think that the best way to phrase materiality

15  outside of the trading context is --

16      THE COURT:  What page are we on?

17      MR. KOSTO:  We were at the bottom of Page 2 of

18  Instruction 25, the sentence --

19      THE COURT:  Of material fact, yes, I just crossed that

02:57 20  out and I added something else.

21      MR. KOSTO:  A material fact here would be information

22  that would affect the decision-maker, whoever that might be; in

23  this case, the administrator of a computer.

24      THE COURT:  I'm not even sure that works.  What I was

25  going to say is, "The government must prove a misrepresentation

1    of the identity of the defendant, or another coconspirator's

2    identity online, to access a computer system to obtain material

3    nonpublic information."  Wouldn't that just be enough if you

4    proved misrepresentation of identity?

5         MR. KOSTO:  Or another participant in the scheme.

6         THE COURT:  Or another person in the conspiracy.

7         MR. KOSTO:  "A participant in the scheme" because it

8    need not be a coconspirator.  This is the substantive count.

9         THE COURT:  "Or another," okay, "participant in the

02:58 10   scheme"?

11         Now, what about, "Misrepresentation of a fact is

12   material if it has a natural tendency to influence or is

13   capable of influencing --"  I'm just not sure we need that.

14   This is about whether or not there was a phony identity.

15         MR. FRANK:  We have no objection to taking it out.

16         MR. FERNICH:  I would take it out.

17         THE COURT:  This is what this case is.

18         MR. FERNICH:  I would take it out altogether.

19         THE COURT:  Yes, so I'm just going to say that "The

02:58 20   government has to prove there was a use of a false identity as

21   part of the scheme."

22         MR. FRANK:  Yes, your Honor.

23         THE COURT:  Okay.  And, by the way, I'm hoping to get

24   you another draft of this so that you'll see the whole thing

25   play out.  I cross out completely the next paragraph.  You both

1    suggest that, and that's correct.

2         MR. FERNICH:  So I just want to make sure that we're

3    all on the same page.  At the bottom of page -- your Honor is

4    going to keep at the bottom of Page 1 of the instruction

5    through the top of Page 2, "If you find the scheme involved the

6    defendant or another participant."  You're going to add that as

7    Mr. Kosto suggested, and that's going to stay.  And then we go

8    to the bottom of Page 2.  You're just going to take out the

9    bottom Paragraph, yes, altogether?

02:59 10        MR. KOSTO:  The bottom sentence.

11        MR. FERNICH:  Well --

12        THE COURT:  Wait, wait, wait, wait.  What sentence are

13   you referring to?  I'm knocking out the entire first paragraph.

14        MR. FERNICH:  Okay, so now --

15        THE COURT:  "A misstated or omitted fact is

16   material --"

17        MR. FRANK:  But there's still the requirement that it

18   be material nonpublic information, so I actually do think there

19   needs to be a materiality component.

03:00 20        THE COURT:  That's why we're going through this.

21        MR. FERNICH:  Okay, I'm not making myself clear.  So

22   let's start with 25 and go to the bottom of Page 1, straddling

23   Page 2.

24        THE COURT:  All right.

25        MR. FERNICH:  It's going to say, "If you find that the

1    scheme involved the defendant or another participant

2    misrepresenting their identity online to access computer

3    systems to obtain material nonpublic information to trade on

4    the confidential information, then you may find --"  That's all

5    going to stay in, right?

6              THE COURT:  Yes.

7              MR. FERNICH:  Now I'm moving down to the last full

8    paragraph at the bottom of the page, Page 2.

9              THE COURT:  Yes.

03:00 10             MR. FERNICH:  All of that is coming out or staying in?

11             THE COURT:  No.  This is the way I'm thinking of

12   having it read -- and I'll get you a redraft so it won't be a

13   surprise for anyone -- "If you find that the government has

14   established beyond a reasonable doubt that a statement was

15   false or a fact fraudulently omitted, you must next determine

16   whether the fact misstated was material under the circumstances."

17   Then I was going to say "The government --"

18             MR. FRANK:  I think -- I'm sorry, your Honor.  I

19   didn't mean to interrupt.  I think that that -- that's where I

03:01 20   think we agree that with respect to the misrepresentation of

21   identity, that doesn't need to be in there.  The only reason

22   there needs to be a materiality instruction is because the

23   information taken --

24             THE COURT:  Can I tell you, I was just going to follow

25   with a sentence, "In this case, therefore, the government must

1   prove a misrepresentation of the identity of the defendant or
2   of another participant in the scheme online to access the
3   computer system to obtain material nonpublic information."
4           MR. FRANK:  I think you just said that in the prior
5   sentence.
6           MR. FERNICH:  That's right.  So my point is, I think
7   that there's common ground between the government and myself.
8           THE COURT:  You don't think I need that sentence?
9           MR. FERNICH:  No, because it's covered by the
03:02 10  paragraph that starts at Page 1 and 2.
11          THE COURT:  Okay, okay.
12          MR. FERNICH:  Mr. Frank, do you want some definition
13  of "materiality," or are you --
14          MR. FRANK:  For purposes of determining what material
15  nonpublic information is.
16          MR. FERNICH:  Right, I understand.  So what would you
17  propose for that?
18          MR. FRANK:  So I actually -- so there, there is a
19  definition of "materiality" on the next page.
03:02 20          MR. FERNICH:  I understand.
21          MR. FRANK:  And so I think instead of saying "A
22  misstated or omitted fact is material," I think we could just
23  say "A fact is material" or "Information is material --"
24          MR. FERNICH:  Yeah, I like that better, okay?  You're
25  basically trying to define what material nonpublic information

1    is.

2            MR. FRANK:  Correct.

3            THE COURT:  Yes, but here it doesn't make sense.  This

4    is the part I had the problem with that I was flagging

5    yesterday because if a reasonable person involving the total

6    mix of information --

7            MR. FERNICH:  How about "Nonpublic information is

8    material if there is --"?

9            MR. FRANK:  Well, actually, we can use the definition

03:03 10   on the prior page:  "Information is material if it would have

11   been significant to a reasonable person's investment decision."

12           MR. FERNICH:  Yeah, I think that starts to confuse the

13   theory.

14           THE COURT:  Yes, because it's not an investment

15   decision.  Whoever it was -- I mean, the one thing there could

16   be no doubt about is, there was a hack here.  Maybe you don't

17   agree with that, but the question is who did it, who done it?

18   And --

19           MR. FRANK:  Your Honor, I'm just suggesting a

03:03 20   definition of materiality for material nonpublic information,

21   and that does relate to investment decisions because that's

22   what makes it material nonpublic information.

23           MR. FERNICH:  He wants to get at what was allegedly

24   taken being material nonpublic information.  I just don't want

25   that to be confused with the representations that are at issue

1    in this case.

2            MR. FRANK:  We could move it elsewhere.  "For purposes

3    of determining what is material nonpublic information,

4    information is material if it would have been significant to a

5    reasonable person's investment decision."

6            MR. FERNICH:  Yes, that's fine.

7            THE COURT:  Where do you want to put that?

8            MR. FERNICH:  You should probably put it right after

9    the straddle part, right?

03:04 10         MR. KOSTO:  You can put it right after device, scheme

11   or artifice -- wait a minute.  I take that back.

12           MR. FRANK:  I think it can go anywhere if you're

13   introducing it with "for purposes of determining what is

14   material nonpublic information."

15           MR. FERNICH:  I would make it the first full paragraph

16   on Page 2 of the instruction, move it right -- after your Honor

17   explains "Hacking in to take material nonpublic information is

18   deceptive," then your Honor could say whatever prefatory

19   information Mr. Frank wanted, and then put that first

03:05 20   sentence --

21           THE COURT:  Could you write out what you just said,

22   Mr. Frank?  I'm not sure I know what you want because I --

23           MR. FRANK:  So at the bottom of Page 1, it says, "If

24   you find that the scheme involved the defendant or another

25   misrepresenting their identity -- or another participant

1   misrepresenting their identity online to access computer

2   systems to obtain material nonpublic information to trade on

3   the confidential information, then you may find --"  So that

4   sentence would stay.  Then the next sentence would be, "For

5   purposes of determining whether nonpublic information is

6   material --"

7            MR. FERNICH:  "-- material fact --"

8            MR. FRANK:  "-- a material --"

9            THE COURT:  "For the purpose of determining --"

03:05 10          MR. FRANK:  "-- whether information is material --"

11            MR. FERNICH:  "-- whether nonpublic information is

12   material."

13            THE COURT:  "-- whether nonpublic --"

14            MR. FERNICH:  "A misstated or omitted fact is

15   material --"

16            MR. FRANK:  No, no, it doesn't have to be misstated or

17   omitted.  "A material fact is one that would have been

18   significant to a reasonable person's investment."

19            THE COURT:  "Nonpublic information is material --"

03:06 20          MR. FERNICH:  "-- if there is a substantial

21   likelihood --"

22            MR. FRANK:  Or we could just say, "Information is

23   material if it would have been significant to a reasonable

24   person's investment decision."

25            MR. FERNICH:  That's fine.

1          THE COURT:  I'm just trying to capture the exact

2    language from the standard.

3          "-- if it would have been viewed by a reasonable

4    person as --"

5          MR. FRANK:  "-- significant to their investment

6    decision."

7          MR. FERNICH:  "-- or as having significantly --"

8    whatever your Honor has there on current Page 3.

9          MR. FRANK:  That's fine.  "-- or as having

03:07 10   significantly altered the total mix of information available."

11          THE COURT:  Yes.

12          MR. FERNICH:  Just merge Mr. Frank's preface with what

13   your Honor has written on Page 3.

14          THE COURT:  Let me read it all.  Why don't I play with

15   it, and I'll give you a revised version tomorrow, sort of get

16   the gist of it.  But I think what we have to get rid of is,

17   it's not the reasonable investor in the -- well, there are two

18   things here:  First there's, "Do you find there was a

19   misrepresentation of identity, Julie Soma?" and, "Do you find

03:08 20   that what was taken was material information?"  Those are the

21   two concepts I'm going to get at by merging these sections.

22   I'm not sure exactly how I'm going to do it yet, and I'll give

23   you a revised version.  Okay.

24          So we are now at venue.  I don't know --

25          MR. KOSTO:  So, your Honor, on venue --

```
 1              THE COURT:  What's your issue?

 2              MR. KOSTO:  -- there is a federal statute that solves

 3      this problem easily.

 4              THE COURT:  3647?

 5              MR. KOSTO:  18 U.S.C. 3238.

 6              THE COURT:  3238.

 7              MR. KOSTO:  It is called the "first-brought venue

 8      provision," and what it says is that "If an offense starts

 9      outside the United States, venue is proper in the first place

10      the defendant is brought into custody."  The defendant here

11      was --

12              THE COURT:  I hadn't heard about this one.

13              MR. KOSTO:  You sent us upstairs to research over

14      lunch, and I apologize we didn't raise it earlier, but the

15      defendant flew nonstop from Switzerland to here in the company

16      of Agent Hitchcock, and this is the first place he was brought.

17      And Congress and the First Circuit -- this is the oldest case

18      I've ever cited dating all the way back World War II -- has

19      held this to be a valid doctrine for venue.  It is a much

20      simpler way to address this problem.

21              THE COURT:  18 U.S.C., Section 3238?

22              MR. KOSTO:  Yes, and it's been endorsed since --

23              THE COURT:  All right, you're just popping it on me.

24              MR. KOSTO:  I understand it's late, your Honor, but it

25      is the law.
```

 1            MR. FERNICH:  No, it can't be the law because that

 2   would enable them to manufacture venue, any foreigner -- it

 3   might have been the law in 1800 or 1700, but in the age of the

 4   Internet, anybody from Mozambique who accesses the Internet in

 5   Buque in order to commit a fraud in Florida, they could just

 6   choose to fly them into Buque and try them there?  No way.

 7            MR. KOSTO:  Well, first of all, Congress wrote the

 8   law.

 9            MR. FERNICH:  It's not the law as set forth --

03:10 10            THE COURT:  Excuse me.  I can only hear one of you at

11   a time.  Could you read the exact statute.

12            MR. KOSTO:  Wait a minute.

13            THE COURT:  I have it right here.  What is it?

14            MR. KOSTO:  It's 18 U.S.C., Section 3238.

15            MR. FRANK:  We can hand it up, your Honor.

16            MR. KOSTO:  If you'd like, we have a printout for

17   Mr. Fernich and for you.

18            THE COURT:  Yes, please.

19            MR. KOSTO:  I'll proceed when the Court is ready.

03:10 20   It's really the first two lines of the statute, not the last

21   three, and there's binding First Circuit precedent on the

22   point.

23            MR. FERNICH:  If that's the law, the statute violates

24   the Sixth Amendment as applied to this defendant.  There's no

25   doubt in my mind about it.

```
 1            THE COURT:  Hold on a second.  I just need to read it.
 2    I'm reading it and thinking out loud.  So if the jury found
 3    that the crime was committed in Russia --
 4            MR. FRANK:  Was begun in Russia.
 5            THE COURT:  What?
 6            MR. FRANK:  Done or committed.
 7            THE COURT:  -- begun in Russia --
 8            MR. FRANK:  We actually don't -- so our position,
 9    Judge, is that this actually should remove this from being a
10    jury issue at all because there's no dispute --
11            MR. FERNICH:  Go for it.  Go for it.  I'll take that
12    up on appeal.
13            THE COURT:  I'm thinking about it.  Calm down.  This
14    is a surprise pop on --
15            MR. FERNICH:  Well, that's the point, okay?  Even if
16    it's not an element --
17            THE COURT:  Excuse me.  Would you let me finish?
18            MR. FERNICH:  Yes.
19            THE COURT:  There is a statute.  So what might happen
20    is, "If you find that --" we don't even have this yet -- "If
21    you find that the crime occurred outside -- began outside, then
22    venue is proper in the United States."  It's possible that they
23    found that the crime was begun --
24            MR. FRANK:  Well, it doesn't matter whether it was
25    Russia.  If it was begun anywhere outside the United States --
```

1          MR. FERNICH:  That's not what the statute says at all.

2     It says, "Upon the high seas or elsewhere out of the

3     jurisdiction," not of the United States, "of any particular

4     state or district."

5          MR. FRANK:  The case law is crystal clear that --

6          THE COURT:  I tell you what:  You're popping it on me.

7     You're popping it on the defense.  It's really worthwhile to

8     consider.  I sure wish I hadn't spent as much time thinking

9     about it as I've been thinking about it.

03:13 10          MR. KOSTO:  You and me both, your Honor.  Can I give

11     you one cite to take with you?

12          THE COURT:  Two cites, and I'll think about it.

13          MR. FRANK:  The only thing I would add is, if your

14     Honor intends, after reviewing the statute, to put the statute

15     to the jury, in that case we would ask to reopen to have

16     Agent Hitchcock testify to the single fact that, unless the

17     defense stipulates to it, that the defendant was brought upon

18     arrest to Boston.

19          MR. FERNICH:  We're not stipulating to anything

03:14 20     because whether or not venue is an element of the offense or

21     not, it's an element of their burden of proof.  And this is a

22     constructive amendment to the indictment.  There's zero notice

23     of this.  They've known about venue forever.  There's zero

24     notice, and they're constructively amending the indictment.

25     And the Supreme Court is going to tell us exactly what venue it

1    is.  Whether it's an element of the offense under *Blockburger*,

2    it's certainly an element of their burden of persuasion.

3    Totally different.

4         MR. KOSTO:  The indictment alleges that the offense

5    took place in the District of Massachusetts and elsewhere, so

6    it is not being constructively amended.  But the name of the

7    case is *United States v. Chandler*.  The cite is 171 F. 2d

8    921 -- I'm embarrassed to say this -- in 1948.  And the facts

9    of the case involved an individual arrested in Germany for

03:15 10   wartime activities, and the plane landed at Westover Air Force

11   Base to refuel on its way down to Washington, D.C.  The

12   defendant was indicted in Massachusetts.  He actually argued

13   that the language of the venue statute which applied back then

14   didn't apply to him because the crime wasn't committed on the

15   high seas; and the First Circuit held, no, the language refers

16   to an offense begun or committed outside the United States.

17        So it appears to the government that it is a binding

18   interpretation of the statute, and we're offering it as an

19   alternative basis for venue under the law of the circuit.

03:15 20        MR. FERNICH:  Give me the cite, please.

21        MR. KOSTO:  It's 171 F. 2d 921.

22        In that half hour we had over lunch, there are four or

23   five cases in this circuit or districts in this circuit that

24   talk about first-brought venue.  It's not often used, but it is

25   a thing.

1          MR. FERNICH:  I'm going to tell you right now that if

2     that's the way they're going to go, A, it's a constructive

3     amendment; B, in the circumstances of this case where somebody

4     from a foreign country is alleged to have used, not in any

5     essential offense conduct element, a VPN site in this district

6     as a passthrough with no purposeful or foreseeable conduct

7     actuating that VPN, that application of this venue statute here

8     violates Article III of the Constitution, and the Sixth

9     Amendment of the Constitution, and Federal Criminal Procedure

03:16 10    Rule 18 of the Constitution.

11          This is in no way anything that the framers of the

12    U.S. Constitution, who put the venue guarantee in there twice,

13    would have remotely foreseen.  It's the exact evil that the

14    venue provision was designed to guard against.

15          MR. KOSTO:  In the place where --

16          THE COURT:  Excuse me.  Enough.  That's just rhetoric

17    at this point.  Let's just look at the case law.  I'm not

18    prepared to rule, and I'm not going to rule, right now.  So as

19    far as I'm concerned --

03:17 20         MR. FERNICH:  And we've already opened on particular

21    venue arguments, and to spring this at this minute, that's

22    nuts.

23          THE COURT:  Did anyone mention venue in the opening

24    statements?

25          MR. FRANK:  Mr. Nemtsev did.

1          MR. NEMTSEV:  I did, your Honor.  We argued venue, why

2     is this case in Boston?

3          MR. KOSTO:  We would not have put in as much venue as

4     we did if this were in our heads, and it wasn't, your Honor.

5          THE COURT:  I understand.  All right, so let me think

6     this through.

7          MR. FRANK:  The other point on venue, just leaving

8     aside this issue, is that under 3237, the offenses that we've

9     charged are all continuing offenses.

03:17 10         THE COURT:  They are.  That is clear.  I don't know,

11    since you've rested --

12         MR. FRANK:  Well, so I wanted to --

13         THE COURT:  -- whether or not you've waived it.  I

14    mean, there's that other issue:  You haven't mentioned it.  You

15    didn't put it in your opening.

16         MR. FRANK:  We've not waived it, your Honor.  So I did

17    cite some cases to the Court, and I cite them again, where the

18    First Circuit, and every other circuit to consider this issue,

19    has held that on the issue of venue, the government can be

03:18 20    permitted to reopen to address that fact.

21         THE COURT:  I think that may be true, and it would

22    just be one line, which is, "He was arrested and brought into

23    Massachusetts."

24         MR. FRANK:  It would literally be one question, yes.

25         THE COURT:  But to suddenly have you waive the whole

1   argument, in other words, in terms of its --

2        MR. FRANK:  I don't think there's a waiver.  I don't

3   think that's a thing.

4        THE COURT:  I don't know.

5        MR. KOSTO:  One of the reasons this wasn't accelerated

6   was, it wasn't brought as a motion to dismiss for improper

7   venue under the Rules of Criminal Procedure, so it's coming

8   late in the day.

9        MR. FERNICH:  That's because there was no venue defect

03:19 10   evident from the face of the indictment, and the motion would

11   have been denied out of hand because they had the opportunity

12   to prove venue.

13        MR. FRANK:  And that's sort of our point, your Honor,

14   is that as a matter of law, venue is proper in this district.

15   There is literally no dispute among the parties that he was

16   brought first to this district.

17        THE COURT:  It's just if you had brought it that way

18   initially -- I understand most cases are resolved as a matter

19   of law, but where there are disputed issues of fact, it goes to

03:19 20   a jury, and now you've created this procedural mess that I have

21   to figure out.  I can't do it as a matter of law now that it's

22   been fully brought to the jury.  I mean, that just seems unfair.

23   But I'm thinking out loud, and that's always a bad way to go,

24   so let me think about it.

25        MR. FRANK:  Understood, your Honor.

1          THE COURT:  And it's just a mess.

2          MR. FRANK:  Well, I would say, we had no idea that

3    they would open on that issue.  That was also a choice, and

4    this statute is in the books for both parties to look at.

5          THE COURT:  Can I say this:  It was never, never,

6    never in doubt that once we had the debate about the MaxMind

7    application, which was several weeks before trial, it was clear

8    that there was going to be a debate about venue.  So this was

9    not something that they brought up at the last minute in

03:20 10   openings.  It was fully freighted, and let me think about it.

11          I'm not going to do anything on preparation of

12   witnesses or individuals not on trial.

13          Okay, now, on venue, what do I do about foreseeability

14   because it is -- we've looked it up -- there's no First Circuit

15   pattern instruction on point.  There's no First Circuit law

16   directly on point.  And there's a straight-up split in the

17   circuits with the Second Circuit, which requires

18   foreseeability, being in the minority of the circuits.

19          I think foreseeability might be relevant.  I'm not

03:20 20   saying -- I haven't ruled on whether I'd allow a question about

21   it, but I don't think it's a burden on the government's part

22   to find foreseeability under the weight of the case law right

23   now and the plain language of the statute, which does not

24   include foreseeability, so I'm unlikely to give a foreseeability

25   instruction.

 1                However, it's preserved for you because, fair enough,

 2      the Second Circuit -- the First Circuit loves the Second

 3      Circuit -- may decide to go that way.  So information may be

 4      relevant that you may elicit tomorrow, but -- and you'll

 5      preserve it.

 6                MR. FERNICH:  Fine.  I understand.  Thank you.

 7                THE COURT:  On the defendants --

 8                MR. FERNICH:  Judge, I have one that I just thought of

 9      on 6, Instruction 6, credibility.

03:21 10                Forgive me.  I switched out of my Sands book.

 11                THE COURT:  Instructions?  Can we go through your

 12      objections first?

 13                MR. FERNICH:  Yes.  I have one that I wanted to add.

 14      I switched out of my Sands to look at the case.  On credibility

 15      from Sands 71 --

 16                THE COURT:  Wait a minute.  I've got to get back to

 17      Instruction 6.

 18                MR. FERNICH:  Oh, I have it.  Never mind.  I would

 19      just like to have the sentence added in the factors you may

03:22 20      consider in determining credibility, "How did the way the

 21      witness testified on direct examination compare with how the

 22      witness testified on cross-examination?"

 23                THE COURT:  So this is on line what?

 24                MR. FERNICH:  Any of the lines where you did the

 25      examples:  "You should consider the conduct and demeanor of the

1    witness while testifying," in any of those semi-colons.

2          THE COURT:  Yes, and what do you want to say?

3          MR. FERNICH:  "How the way the witness testified on

4    direct examination compared with the way the witness testified

5    on cross-examination."

6          THE COURT:  All right, so let's go through the ones

7    that you listed.  Wire fraud, which is --

8          MR. FERNICH:  Yeah, wire fraud.

9          THE COURT:  Do you disagree with their draft

03:23 10   Instruction 19?

11          MR. FERNICH:  No.  Just instead of disjunctive, just

12   conjunctive.

13          MR. FRANK:  I'm sorry.  Where are we?

14          THE COURT:  Draft Instruction 19.  Do you have an

15   objection to saying "to defraud and obtain money or property"?

16          (Pause.)

17          MR. FRANK:  I don't think that we need to prove --

18   well --

19          THE COURT:  The First Circuit pattern instructions say

03:24 20   "to defraud or to obtain money or property by means of false or

21   fraudulent pretenses."

22          MR. FERNICH:  That's our preference, your Honor.  It's

23   not vital one way or another.

24          THE COURT:  To take the First Circuit pattern

25   instructions?

1        MR. FERNICH:  Yes.

2        THE COURT:  Does that seem okay to you?  Okay, so...

3        Well, actually, that's the way I have it.

4        MR. FERNICH:  Yes, you're okay.

5        THE COURT:  I think I'm okay with that.  I think I'm

6   okay with that.  All right?

7        And then this is not a good quote from *Dorozkho*.

8        MR. FERNICH:  I'm sorry?

9        THE COURT:  On draft Instruction 25, securities fraud,

03:25 10   this is not a good quote.  It's a partial quote, and I don't

11   think that's accurate from *Dorozkho*.

12        MR. FERNICH:  Which part does your Honor think is not

13   accurate?  I think the word is "may" --

14        THE COURT:  Excuse me.  It says --

15        MR. FERNICH:  "May not be."

16        THE COURT:  It says -- I'm reading -- you're welcome

17   to take a look at it -- "It is unclear, however, that

18   exploiting a weakness in an electronic code to gain unauthorized

19   access is deceptive rather than being mere theft."

03:26 20        So I'm not inclined to do that because I think that's

21   not what they were trying to say.  But, in any event, the issue

22   here I've already addressed by saying they have to prove

23   misrepresentation, so I don't think we need to go there.

24        MR. FERNICH:  Okay.

25        THE COURT:  And I think the next points about those

1  two sections as being extraneous are correct.  That's what we

2  just fixed, I think.

3        MR. FERNICH:  Yes.

4        THE COURT:  On venue, did you have a problem -- I

5  mean, I understand you have an overarching issue pending right

6  now, but the language does seem to be after Line 14 in draft

7  Instruction 28...

8        MR. KOSTO:  I'm sorry, your Honor.  What line?

9        THE COURT:  Mr. Fernich did draft Instruction 28, and

03:27 10  it says after Footnote 14, which is the *Baugh* case, "To

11  determine whether a meaningful connection exists, you must

12  consider the nature of the crime alleged and the act or acts of

13  the essential conduct elements constituting it."

14        MR. FRANK:  Yes, I think that's extremely confusing,

15  and the jury has no basis to determine what is essential

16  conduct.  That's a term of art.

17        THE COURT:  Right, so I understand what he's getting

18  at, though.

19        MR. FRANK:  Yeah, I mean --

03:28 20        THE COURT:  Why don't I just say "the act or acts"

21  instead of "the essential conduct"?

22        MR. FRANK:  Because the fact is, for a continuing

23  offense, all we have to prove is that the wire passed through

24  this district, and so this other language sort of muddles that.

25        MR. FERNICH:  Well, I don't agree that that's all they

1    have to prove, and I'll set that out in the brief for acquittal,

2    and these instructions are drawn from the cases that I've

3    cited.

4          THE COURT:  Well, we'll look at those cases, but I

5    might say something like that.  It's the act or acts, one of

6    the acts.

7          MR. FRANK:  Something like what?  I'm sorry, your

8    Honor.

9          THE COURT:  I understand what you're saying, which is

03:29 10    the words "the essential conduct elements" is confusing.

11    That's appellate language, not jury language.  But I don't

12    think it's so unclear to say, "You must consider the nature of

13    the crime alleged and the act or acts constituting it."  That's

14    pretty clear.  So that's what I'm likely to do.

15          MR. FRANK:  I don't think we discussed our other

16    objection on this point, which was that the language before

17    Footnote 14 doesn't seem --

18          THE COURT:  Well, I'm not sure it's applicable now

19    anyway, because of the statute anyway.  I'm not sure I will

03:29 20    include it if that statute is on point.  So it's just a

21    question mark for me.  I mean, if the statute is not on point,

22    I think it's completely accurate.

23          MR. FRANK:  Yeah, my point wasn't accuracy.  It's just

24    a lot.

25          THE COURT:  Because the question is --

1        MR. FRANK:  This was to your Honor's --

2        THE COURT:  -- the constitutional issue, if you will.

3   Even if your statute is correct, constitutional?  In other

4   words, you seem to be reading it correctly -- I'm not refuting

5   that -- but how do you jibe that with the constitutional

6   requirement that a criminal defendant must be tried in the

7   state or states in which the offense shall have been committed?

8        MR. FRANK:  The First Circuit has held and other

9   circuits have held that it applies.  It's been upheld

03:30 10  repeatedly.

11        MR. KOSTO:  We'll take a look.

12        THE COURT:  I'm just thinking out loud.  I don't know

13  how you reconcile that.  On the other hand, you have a good

14  argument about the statute that I wish I'd thought about

15  before.  I am not going to suddenly whip venue away from this

16  jury, so how I'm going to address this is a whole other issue.

17        MR. FRANK:  I was just making a more mundane point,

18  which is that the language before Footnote 14, it's just

19  background; it's not really relevant to the decision they have

03:31 20  to make, and it sort of elevates --

21        THE COURT:  What line are you referring to?

22        MR. FRANK:  The introductory language describing the

23  background of the venue, the reason that venue is something

24  that's for the jury to consider.

25        THE COURT:  Oh, you mean just the first sentence.

1          MR. FRANK:  I'm sorry.  I lost my page here.  The

2     reference to Article III of the Constitution -- is that one

3     sentence?  Yes, it is one.  No, it's two sentences.  No, it's

4     three sentences.

5          THE COURT:  No, I'm going to tell them about

6     continuing offenses.  I thought that the original venue

7     instructions were woefully inadequate.  You have to explain

8     what we're talking about, and I'm struggling with --

9          MR. FRANK:  Well, then at least the first sentence,

03:32 10   your Honor.

11          THE COURT:  Well, I just have to think about it.  The

12     first sentence is a hundred percent accurate, except I don't

13     know how I jibe it with that new statute you just --

14          MR. FRANK:  It is accurate, but it's true of a lot of

15     the instructions.  It's just we don't tell them for every

16     instruction that this is grounded in the Constitution.

17          MR. FERNICH:  Well, I would say --

18          MR. FRANK:  It would be unique --

19          THE COURT:  Well, I actually do talk about --

03:32 20     MR. FRANK:  You do generally in the beginning, but --

21          THE COURT:  Anyway, all right, that's not a big point.

22     The big point is this new statute which I'm having cardiac

23     arrest over, but --

24          MR. FERNICH:  No, there's no need for that.  We'll

25     sort it out.

1          THE COURT:  All right, so -- because I'm just not sure

2     what the right answer is.  I'm unlikely to give a foreseeability.

3     I think it's a very fair issue preserved on appeal, if we

4     should ever get there.  The Second Circuit plainly holds it,

5     and it's still good law in the Second Circuit.  Many other

6     circuits have not held that, and it's not in the "continuing

7     offense" statute.  That said, I will allow a question on it

8     tomorrow on whether it's foreseeable to him because I think

9     that's relevant information, but it's not going to be

03:33 10    dispositive by reasons of a jury instruction.

11          All right, so can we just talk together about what

12     this all means, since so much of this trial -- I don't want to

13     do a mistrial.  I don't want to suddenly confuse the jury, why

14     did we do all this?  I'm just trying to figure out whether I

15     just add a section on that as an alternative theory on venue.

16          MR. FERNICH:  I want some time to take a look at it

17     because it talks about "If an offender/offenders is arrested or

18     is first brought."  I'm willing to bet dollars to doughnuts

19     that the person who landed on the tarmac here wasn't already

03:33 20    under a sealed indictment and extradited here.  An arrest is

21     different from an arrest upon an indictment.  This was an

22     indictment that was sealed up.  They sought his extradition.

23     It was preexisting.  I get the fact that if somebody is in

24     transit and lands in a district and there's no pending

25     indictment and they pick him up and nab him, they can try him

1    anywhere, but this is a totally different kettle of fish.

2    There was a long-running investigation, and he was arrested on

3    an indictment that already laid venue in the District of

4    Massachusetts before he was arrested.  Just I'd like a little

5    shot at taking a look at these cases.  It can't be this.  It's

6    not conceivable to me, and it can't be squared with the Sixth

7    Amendment.

8            MR. FRANK:  So we don't object to counsel taking a

9    look at it, but as to your Honor's suggestion that as an

03:34 10    alternative, that would be fine, as long as we have the

11    opportunity to put in the question.

12            THE COURT:  To?

13            MR. FRANK:  To pose the question to Agent Hitchcock so

14    that that's in the record.

15            THE COURT:  I'd be likely to do that with one

16    question, but the issue is, how do I address the statute?  And

17    I just want to think about it.  Tomorrow I think we may --

18    we're likely to finish tomorrow, potentially going into the

19    next day, but there's almost certainly going to be closings, so

03:35 20    I have to figure this out by Friday, and we will.  Okay.

21            MR. KOSTO:  Your Honor?

22            THE COURT:  Yes.

23            MR. KOSTO:  At the risk of one more issue, I think it

24    might be better now than at 8:30 tomorrow morning.  The issue

25    with the last two website documents that Mr. Nemtsev would like

1    to introduce through Mr. McDonnell, who is the witness on the

2    stand, they relate to a website called the Wayback Machine

3    which is an archive on the Internet.  The Wayback Machine is

4    not the subject of his disclosure.  And the Wayback Machine, in

5    addition to being hearsay, is simply not something that the

6    government believes is appropriate subject for expert testimony

7    when it hasn't been disclosed.  We anticipate that he would ask

8    him questions about the Wayback Machine --

9             THE COURT:  If it's not in the report, he can't do it.

03:36 10            MR. KOSTO:  It is not.

11             MR. NEMTSEV:  Your Honor, he's not making an opinion

12    about the Wayback Machine.  Mr. Wall from StackPath testified

13    that he believed that it was reliable, and this is just

14    something --

15             THE COURT:  If it's not in the report --

16             MR. NEMTSEV:  It's like a newspaper, though.

17             THE COURT:  What?

18             MR. NEMTSEV:  It's like an archive, an old newspaper.

19    You go to the library; you take out an old newspaper.  This is

03:36 20    just for Internet websites.

21             THE COURT:  Did he disclose in his report that he'd be

22    discussing it?

23             MR. NEMTSEV:  I mean, we've disclosed these exhibits

24    for a long time.

25             MR. KOSTO:  It's not in the report, your Honor.

```
 1              THE COURT:  I hold people to the reports, both sides,
 2     I mean, if it's in there, but it's not in there.
 3              MR. FERNICH:  Can we just go back to venue --
 4              THE COURT:  Can I just say for a minute so I don't end
 5     up with --
 6              MR. NEMTSEV:  Yeah.
 7              THE COURT:  What does it say?  I don't even know.
 8              MR. NEMTSEV:  Oh, it just says -- it shows what
 9     StrongVPN's website looked like back in the day.  That's all it
10     shows.
11              THE COURT:  What does it say?
12              MR. NEMTSEV:  It just says they don't have a Boston
13     server.  That's all it says.  They never advertised it.
14              THE COURT:  Excuse me?
15              MR. NEMTSEV:  They never advertised it.  They never
16     put it on the list of --
17              MR. KOSTO:  Mr. Wall testified that it took a while to
18     update.
19              MR. NEMTSEV:  He said weeks.  I put in records for
20     nine months, Judge.
21              MR. FRANK:  So he's putting it in for its truth now.
22              MR. NEMTSEV:  Well, no.  I'm putting it in as this is
23     what they advertise; this is the notice to the public.
24     Somebody would log into that VPN, try to access it; they
25     wouldn't even know that they have a Boston server, for God's
```

1    sake.

2            MR. FRANK:  There's no evidence that the defendant

3    logged into it to look at it.

4            MR. NEMTSEV:  Well, then I don't know why we're here.

5            THE COURT:  That's a different issue altogether, but

6    if it's not in the report, it doesn't come in.

7            MR. FERNICH:  Can I just go back to this venue for one

8    second because I think I've lost the forest for the trees here.

9    The Statute 3238 says, "The trial of offense is begun or

03:37 10  committed upon the high seas or elsewhere out of the jurisdiction

11   of any particular state or district."  These offenses were not

12   committed out of the jurisdiction of any particular state or

13   district.  If your Honor reads the Third Circuit case that I've

14   submitted, *Auernheimer*, there's no question that the offense

15   was committed, A, in Russia, and, B, at the locations of Toppan

16   Merrill in Minnesota and DFIN, wherever that was located.  That

17   case makes clear that venue is proper in the place where the

18   hack was initiated or where the information was obtained.  The

19   information was obtained in Minnesota, and it was obtained

03:38 20  wherever DFIN was.

21           THE COURT:  What do you do with conspiracy, which

22   clearly started before then?

23           MR. FERNICH:  The conspiracy could have also --

24           THE COURT:  The agreement, I mean, they must have

25   because they're all Russian.

 1          MR. FRANK:  He's ignoring the first part of the

 2   statute, your Honor.

 3          MR. FERNICH:  I'm not finished.

 4          MR. FRANK:  The statute begins the trial of all --

 5          THE COURT:  No, no.  He's not finished.

 6          MR. FERNICH:  I'm not finished.  "A conspiracy is also

 7   committed wherever an overt act took place," which would also

 8   have been committed in Minnesota where they took the

 9   information, or wherever DFIN's headquarters is.  This statute

03:39 10   is not applicable on its face, and that's *Auernheimer*.

11          MR. FRANK:  He's ignoring the first part of the

12   statute, your Honor.

13          MR. FERNICH:  No, because it's disjointed.  I'm not

14   ignoring anything.

15          THE COURT:  All right, thank you.  I'll see you

16   tomorrow.

17          (Adjourned, 3:39 p.m.)

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

    UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )

5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 39 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Criminal No. 21-10104-PBS,

11  United States of America v. Vladislav Klyushin, and thereafter

12  by me reduced to typewriting and is a true and accurate record

13  of the proceedings.

14          Dated this 17th day of February, 2023.

15

16

17

18

19

20          /s/ Lee A. Marzilli
            _____

21          LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER

22

23

24

25